MOORE v. BAHR et al.

(Circuit Court, D. South Carolina. July 8, 1897.)

1. INTOXICATING LIQUORS—INTERSTATE COMMERCE—RIGHT TO STORE ORIGINAL PACKAGES.

The right to import and sell intoxicating liquors in original packages in South Carolina being established by the law of interstate commerce, a dealer who is a citizen of another state has a right to store such liquors within the state for purposes of sale.

2. SAME—SALES IN ORIGINAL PACKAGES—DISPENSARY LAW OF SOUTH CAROLINA.

Sales of intoxicating liquors in South Carolina by citizens of other states, in the original packages in which they are imported into the state, are subject to the regulations imposed by the dispensary law of the state as to the times and quantities in which, and the persons to whom, they may be made, and all such provisions as are in the nature of police regulations.

Suit in equity by W. G. Moore, a citizen and resident of the state of New York, against W. N. Bahr, C. F. Glover, W. Livingston, S.

Duncan, J. J. Browning, William J. Schneider, E. V. Baker, and J. M. Scott, citizens and residents of South Carolina, and state constables. Heard on rule to show cause why injunction should not issue, and return thereto.

J. N. Nathans, for complainant.
Wm. A. Barber, for respondents.

SIMONTON, Circuit Judge.    The complainant, a rectifier of liquor and wholesale liquor dealer in the city of New York, files his bill against the defendants, who are state constables appointed under the provisions of the dispensary act.    The facts stated are that the complainant shipped to Charleston, by the Clyde Steamship Company, an interstate commerce carrier, certain liquors, wines, and beer, products of other states, in original packages, to be stored for the purposes of sale in such original packages by his agent in that behalf appointed; that the defendants had entered the premises, and had seized his goods, and had interfered with the sale thereof; that they are hopelessly insolvent; and that he has no remedy at law.    The bill prayed an injunction.    The return to the rule to show cause, after setting up certain objections to the jurisdiction, admits substantially the facts stated in the bill, and denies the right of the complainant to import into this state the wines, liquors, and beer mentioned in the complaint, or to store them therein, or to sell them by his agent, as claimed by him.    The jurisdiction of this court, upon the facts stated in the bill, seems clear.

At the hearing it appeared that there was no difference of opinion between counsel as to what constituted an original package, and it was agreed that the packages which were stored and offered for sale in this case were original packages.    The questions made were these: Has a dealer, a citizen of a state other than South Carolina, a right to import liquors, wines. and beer, in original packages, and to store them in this state for purposes of sale?    If this question be answered in the affirmative, must such sales be conducted under the restriction of time, quantity, and persons made in the dispensary law?

In Cantini v. Tillman, 54 Fed., 969, after full discussion and consideration, it was held by this court that the dispensary law, in its general provisions, did not conflict with the constitution of the United States or of this state.    In that case, Cantini, a wholesale and retail dealer in liquors, resident in Charleston, claimed the right to carry on his business, notwithstanding the dispensary law, both on the ground of the unconstitutionality of the law, and because he was a subject of the king of Italy, and was protected by treaty stipulations. The court decided the case on the facts before it, but it expressly reserved the question whether the act was not void in such of its provisions as were in conflict with the interstate commerce law.    In the case In re Langford, 57 Fed. 570, it became necessary to discuss some provisions of the dispensary law conflicting with interstate commerce, and it was held that in so far as such conflict existed the law was inoperative and void.    These two decisions are unreversed, and are the law for this court.    In Donald v. Scott, 67 Fed. 854, a full dis-

cussion of the relations between the dispensary acts and the law of interstate commerce was had, and the decision was reached that under the protection of the interstate commerce law any resident of this state could, notwithstanding the dispensary acts, import liquors for his own use and consumption.    This decision has been sustained by the supreme court of the United States in Scott v. Donald, 165 U. S. 58, 17 Sup. Ct. 262.    In the Vandercook Case (recently heard and decided in this court) 80 Fed. 786, following the supreme court in Scott v. Donald, it was held that a producer of wines and other liquors in California had a right to import and sell in this state his products in original packages.    No difference can be seen in principle between the right of a producer, as in the Vandercook Case, and that of the complainant in this case.    Both are equally under the protection of the interstate commerce law.    The conclusion reached in this line of cases is this:    The state, in the exercise of the police power, can declare that the use of intoxicating liquors of all kinds as a beverage is noxious,—injurious to the health, welfare, and safety of the people, —and, having so declared, can forbid the manufacture, importation, and sale of such liquors within her borders.    That such prohibition takes intoxicating liquors out of the category of articles of commerce, and is not in conflict with the interstate commerce law.    But that so long as the state recognizes the use of intoxicating liquors as a bever·age, and encourages such use by purchasing them in large quantities, and selling them for such use to the inhabitants within her borders, accompanying such purchase and sale with a prohibition to others from doing the like, this prohibition is not a lawful exercise of the police power.    On the contrary, it is an attempt, under the guise of the police power, to secure for the state the benefits, profits, and emoluments of the liquor traffic heretofore enjoyed by individual citizens, and so increase her revenue.    And for greater certainty in this behalf a monopoly in this traffic is created in the state.    That the state cannot engage in this business for this purpose in contravention of the rights of citizens of the other states.    This being so, and the right to import and sell in original packages being established, it necessarily follows that there must exist a right to have a place for the receipt and exposure for sale of the original packages so imported. The one is the inevitable consequence of the other.    But when this has been accomplished the protection of the interstate commerce law ceases.    This law protects the original package in its importation and in its sale.    The hours within which the sale can be made, the persons to whom it can be made, the quantity at one time to be sold, and the disposition after sale are within the police power of the state. The provisions of the dispensary acts, except in so far as they conflict with the interstate commerce law, are absolutely binding on all persons within the state.    So, when once a sale has been made of an original package, and its delivery within the state, it cannot again be sold by its recipient or any one else without violation of the law.    No sale can be made of liquors, wines, or beer in original packages anywhere except between the hours by law appointed,—sunrise and sunset.    No sales can be made in such packages of liquors, wines, or beer to be drank on the premises, none in quantities less than half a

pint, none on Sunday, and none to minors or habitual drunkards. These police provisions are irrevocably fixed in the public policy and police law of the state, and must be observed by all persons, citizens or strangers, doing business within the boundaries of the state. With these modifications and restrictions, let an injunction issue as prayed for in the bill.